JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

**APPENDIX H**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
JONATHAN BART AND MARY BART

**DEFENDANTS**
THE FIRST LIBERTY INSURANCE CORPORATION

(b) County of Residence of First Listed Plaintiff Philadelphia County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Suffolk County, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jonathan Bart, Esquire, **Wilentz, Goldman & Spitzer, P.A.**, Two Penn Center Plaza, Suite 910, Philadelphia, Pennsylvania 19102 - (215) 940-4000

Attorneys (If Known)
Pamela A. Carlos, Esquire, Bennett, Bricklin & Saltzburg, LLP, 1601 Market Street, 16th Floor, Philadelphia, PA 19103 - (215) 665-3315

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- X 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- X 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C. §§1332, 1441 and 1446

Brief description of cause:
breach of contract, bad faith pursuant to 42 Pa. C.S.A. 8371

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $** In excess $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** Yes x No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER ______

DATE
March 27, 2009

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**APPENDIX F**

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 6664 Lincoln Drive, Philadelphia, PA 19119

Address of Defendant: 3000 Hanover Street, Palo Alto, CA 94340

Place of Accident, Incident or Transaction: 6664 Lincoln Drive, Philadelphia, PA 19119
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ NoX

Does this case involve multidistrict litigation possibilities? Yes☐ NoX

*RELATED CASE, IF ANY:*

Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ NoX
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ NoX
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ NoX

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases (Please specify)

B. *Diversity Jurisdiction Cases:*
1. Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, ______, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

**DATE:** ______ ______ Attorney-at-Law ______ Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

**DATE:** March 27, 2009 [signature] Attorney-at-Law 36676 Attorney I.D.#

CIV. 609 (4/03)

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JONATHAN BART and MARY BART** :
:
**vs.** :
:
**THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP** : **NO.**
:

**DISCLOSURE STATEMENT FORM**

Please check one box:

✗ 100 % stock of the nongovernmental corporate party, The First Liberty Insurance Corporation is owned by Liberty Mutual Insurance Company. No publicly traded entity owns any of its stock.

The nongovernmental corporate party, ______________________ in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

March 27, 2009
Date

______________________
Signature

Counsel for: The First Liberty Insurance Corporation Incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN BART and MARY BART** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP** | : : | **NO.** |

**DISCLOSURE STATEMENT FORM**

Please check one box:

✗ 100 % stock of the nongovernmental corporate party, The First Liberty Insurance Corporation is owned by Liberty Mutual Insurance Company. No publicly traded entity owns any of its stock.

The nongovernmental corporate party, ____________, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

March 27, 2009
Date

[signature]
Signature

Counsel for: The First Liberty Insurance Corporation Incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group

**APPENDIX I**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| **JONATHAN BART and MARY BART** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP** | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| March 27, 2009 | Pamela A. Carlos, Esquire | [signature] |
| **Date** | **Attorney-at-law** | **Attorney for Defendant** |
| (215) 665-3315 | (215) 561-6661 | carlos@bbs-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN BART and MARY BART** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP** | : | **NO.** |

**NOTICE OF REMOVAL**

AND NOW, comes defendant, The First Liberty Insurance Corporation incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group (hereinafter 'First Liberty') for the purpose only of removing the cause to the United States District Court for the Eastern District of Pennsylvania and respectfully avers as follows:

1. This is a civil action filed and now pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, June Term 2008 No. 1929.

2. The lawsuit was instituted by writ of summons on June 11, 2008. On September 4, 2008 defendant issued a Rule to File Complaint upon plaintiffs.

3. On March 4, 2009 plaintiffs filed their complaint. (See attached true and correct copy of complaint marked as Exhibit 'A').

4. A copy of the complaint was sent to defendant's counsel on March 4, 2009.

5. The averments made herein are true and correct with respect to the date and time upon which suit was commenced and the date upon which this notice is being filed.

6. This suit is of a civil nature and involves a controversy between citizens of different states. Plaintiffs are citizens of the Commonwealth of Pennsylvania. Defendant First Liberty is now

and was at the time plaintiffs commenced this civil action and filed their complaint, a corporation organized under the laws of the State of Iowa and with its principal place of business at 175 Berkeley Street, Boston, Massachusetts.

7.     Defendant, First Liberty has simultaneously with the filing of this notice, given written notice to the plaintiffs.

8.     Defendant is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Philadelphia County.

9.     The complaint asserts breach of contract and bad faith, pursuant to 42 PA C.S.A. Sec. 8371 against defendant.  The amount in controversy is listed as to each count of the complaint is excess of $50,000.

10.     In their bad faith claim, pursuant to 42 Pa. C.S.A. §8371, plaintiffs seeks, in addition to compensatory damages, interest upon the amount of their contract claim against First Liberty at prime rate plus three percent, punitive damages, attorney's fees and costs.

11.     First Liberty seeks to remove this matter to the United States District Court for the Eastern District of Pennsylvania. First Liberty asserts that the potential amount in controversy in this matter exceeds $75,000.   As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court. Russ vs. State Farm Mutual Automobile Insurance Company, 961 F.Supp. 808, 810 (E.D. Pa. 1997).

12.     In determining whether the jurisdiction amount has been satisfied, the Court must first look at the complaint. Angus vs. Shiley, Inc., 989 F.2d 142, 145 (3rd Circ. 1993).

13.     The underlying lawsuit arises out of defendant's handling and issuance of payment for a property damage claim occurring on June 12, 2007 at 6664 Lincoln Drive in Philadelphia,

Pennsylvania. Plaintiffs aver in the prayer for relief to the breach of contract claim that their claimed damages total $64,972.50. See Exhibit 'A'.

14.   With reference to their bad faith claim pursuant to 42 Pa. C.S.A.§8371, plaintiffs seek attorney's fees. Attorney's fees must also be included in determining the amount in controversy. Neff vs. General Motors Corp., 163 F.R.D. 478, 482 (E.D. Pa. 1995). It would not be unreasonable to expect that over the course of an approximate six month litigation, counsel could incur costs and fees in an amount approaching $10,000.

15.   In addition, plaintiffs also seeks punitive damages pursuant to 42 Pa. C.S.A. §8371. Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. Bell vs. Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943). The alleged amount in controversy, as known at this time, coupled with estimated reasonable attorneys' fees nears $75,000. However, in the event plaintiff is able to sustain a finding of bad faith, although the propriety of same is disputed by moving defendant, it is not unreasonable to expect that a punitive damage award up to two or three times the amount in controversy could be rendered by the trier of fact.

16.   On March 16, 2009, defense counsel wrote to plaintiffs' counsel inquiring as to whether plaintiffs would agree to stipulate to cap damages at $75,000, in toto. In that letter, defense counsel advised that if she did not hear from plaintiffs by March 27, 2009, that she would move to file the instant removal petition. Defense counsel was advised by plaintiffs' counsel on March 17, 2009 that he would not be agreeable to executing a stipulation to cap damages.

**WHEREFORE,** defendant, First Liberty hereby removes this suit to this Honorable Court pursuant to the laws of the United States in such cases made and provided.

**BENNETT, BRICKLIN & SALTZBURG, L.L.P.**

**By:** PAC2642

**PAMELA A. CARLOS, ESQUIRE**
**Attorney for Defendant**
**The First Liberty Insurance Corporation**

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN BART and MARY BART** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP** | : | **NO.** |

**NOTICE**

**TO:** Jonathan Bart, Esquire
**Wilentz, Goldman & Spitzer, P.A.**
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

Please take notice that defendant, The First Liberty Insurance Corporation has filed a Notice of Removal to the United States District Court for the Eastern District of Pennsylvania removing to that Court a civil action previously pending in the Court of Common Pleas of Philadelphia County, entitled, Jonathan Bart and Mary Bart vs. The First Liberty Insurance Corporation c/o The Liberty Mutual Group, June Term 2008, No. 1929.

**Dated: March 27, 2009**

**BENNETT, BRICKLIN & SALTZBURG, L.L.P.**

By: PAC2642
PAMELA A. CARLOS, ESQUIRE
I.D. #56396
Bennett, Bricklin & Saltzburg, LLP
1601 Market Street, 16th Floor
Philadelphia, PA 19103
**Attorney for Defendant**
**The First Liberty Insurance Corporation**
**Incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group**

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN BART and MARY BART | : | |
| | : | |
| vs. | : | |
| | : | |
| THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP | : | NO. |

**PROOF OF FILING**

COMMONWEALTH OF PENNSYLVANIA:
§
COUNTY OF PHILADELPHIA :

Pamela A. Carlos, Esquire, being duly sworn according to law, deposes and says that she is a partner in the law firm of Bennett, Bricklin & Saltzburg, LLP, attorneys for defendant, The First Liberty Insurance Corporation incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group.

That she did direct the filing with the Prothonotary of the Court of Common Pleas of Philadelphia County a copy of the Notice of Removal, attached hereto, said filing to be made on 27th day of March, 2009.

**Dated:** **March 27, 2009**

**BENNETT, BRICKLIN & SALTZBURG, L.L.P.**

By: **PAC2642** [signature]

**PAMELA A. CARLOS, ESQUIRE**
**I.D. #56396**
**Bennett, Bricklin & Saltzburg, LLP**
**1601 Market Street, 16th Floor**
**Philadelphia, PA 19103**
**Attorney for Defendant, The First Liberty Insurance Corporation Incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNE M. McDEVITT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 22, 2010

**Sworn to and subscribed before me this** 27th **day of** March **, 2009**

[signature: Anne M. McDevitt]
**NOTARY PUBLIC**

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN BART and MARY BART | : | |
| | : | |
| vs. | : | |
| | : | |
| THE FIRST LIBERTY INSURANCE CORPORATION c/o THE LIBERTY MUTUAL GROUP | : | NO. |

**PROOF OF SERVICE**

COMMONWEALTH OF PENNSYLVANIA:
§
COUNTY OF PHILADELPHIA :

Pamela A. Carlos, being duly sworn according to law, deposes and says that she is a partner in the law firm of Bennett, Bricklin & Saltzburg, LLP, attorneys for defendant, The First Liberty Insurance Corporation and that she did serve this 27th day of March 2009, the aforementioned notice to plaintiff upon the individual named below by depositing a copy of same in the United States Post Office box, postage prepaid, enclosed in envelopes plainly addressed to:

Jonathan Bart, Esquire
**Wilentz, Goldman & Spitzer, P.A.**
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

**Dated: March 27, 2009**

**BENNETT, BRICKLIN & SALTZBURG, L.L.P.**

**By: PAC2642**
**PAMELA A. CARLOS, ESQUIRE**
**I.D. #56396**
**Bennett, Bricklin & Saltzburg, LLP**
**1601 Market Street, 16th Floor**
**Philadelphia, PA 19103**
**Attorney for Defendant, The First Liberty Insurance Corporation Incorrectly characterized as The First Liberty Insurance Corporation c/o The Liberty Mutual Group**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANNE M. McDEVITT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 22, 2010

**Sworn to and subscribed before me this 27th day of March, 2009**

Anne M. McDevitt
**NOTARY PUBLIC**

# Exhibit "A"

WILENTZ GOLDMAN & SPITZER, P.A.
BY: Jonathan J. Bart, Esquire
Identification No. 49114
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102
(215) 636-4466

| | |
|---|---|
| JONATHAN J. BART<br>and<br>MARY KENNEDY BART<br>Plaintiffs,<br>v.<br>FIRST LIBERTY INSURANCE CORP.<br>c/o LIBERTY MUTUAL GROUP<br>Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>JUNE TERM, 2008<br><br>NO. 001929 |

NOTICE

You have been sued in court. If you wish to defend against the claim set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SE FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguentes, usted tiene veinte (20) dias de plazo a partir de la fecha de la demanda y la notificacion. Hace falta assentar una comparencia escrita a en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas la corte puede decidir a favor del demandate y requiere que usted cumpia con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NOTIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA A VERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIACION DE LICENCIADOS DEFILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

WILENTZ GOLDMAN & SPITZER, P.A.
BY: Jonathan J. Bart, Esquire
Identification No. 49114
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102
(215) 636-4466

| | |
|---|---|
| JONATHAN J. BART<br>and<br>MARY KENNEDY BART<br><br>Plaintiffs,<br>v.<br><br>FIRST LIBERTY INSURANCE CORP.<br>c/o LIBERTY MUTUAL GROUP<br>Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>JUNE TERM, 2008<br><br>NO. 001929 |

**COMPLAINT**

Plaintiff, Jonathan J. Bart and Mary Kennedy Bart (the "Barts"), by their undersigned counsel, for their Complaint against First Liberty Insurance Company, allege as follows:

**SUMMARY OF THE ACTION**

1. This is an action by two insureds of Defendant First Liberty Insurance Corp. d/b/a Liberty Mutual Insurance ("Liberty Mutual") for indemnification under an insurance policy and for bad faith for failing to adjust the claim in good faith within a reasonable time. After a severe windstorm which blew over a mature sugar maple tree, crashing into the Plaintiffs house, the Defendant sent out an adjuster, who noted the severe damage to the roof, side and front of the house, as well as collateral damage. When no response was received from this adjuster, Plaintiffs made numerous phone calls to the Defendants, for over a month. At that point, Plaintiffs located the adjuster's manager, who stated that the adjuster had taken a leave "for

personal reasons" and that a new adjuster would be sent out to review the damage. No one else from Liberty Mutual ever came to inspect the house or adjust the loss; instead the adjuster's manager sent out a purported low ball "adjustment" from his office in Pittsburgh without ever looking at the house. When Plaintiffs complained, the manager told them to "go get your own estimates." Not until after suit was brought did Defendants request an opportunity to send out an adjuster to adjust the loss, at which point a year and a half had gone by without repairs to the house and even then, the adjusted loss was woefully short of the actual loss. Plaintiffs seek damages both under their insurance contract and under 42 P.S. §8371 for bad faith based on the failure to timely and adequately adjust the loss and for providing an "adjustment" without any factual basis.

## THE PARTIES

2. Plaintiffs Jonathan J. Bart and Mary Kennedy Bart are a married couple who are residents of the Commonwealth of Pennsylvania with an address located 6664 Lincoln Drive, Philadelphia, PA 19119.

3. Defendant First Liberty Insurance Corp. is, upon information and belief, a division of Liberty Mutual Group, Inc., a foreign insurer with a principal place of business located 1717 East Grant Street, Suite 150, Phoenix, AZ.

## FACTUAL BACKGROUND

4. The Barts are insureds under a homeowner's policy with Liberty Mutual, number H36-288-01283-607. Although Plaintiffs were not provided with copies of their insurance policy, an exemplar copy provided subsequent to the institution of this action is attached hereto as Exhibit "A."

5. The declarations for the policy state that the policy provided coverage to the dwelling with expanded replacement cost in the amount of $559,500.00 and coverage of $55,950.00 for other structures on residents' premises.

6. Section One of the Policy, entitled "Property Coverages" states that the dwelling, i.e., the "Residents' premise" at 6664 Lincoln Drive was covered by the policy up to the coverage limit of $559,500.00.

7. The policy further provides that "buildings under coverage A or B, which cover property losses, are to be settled "at replacement cost **without deduction for depreciation.'"**

8. The policy further provides that "we will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable sixty (60) days after we receive your proof of loss."

9. On June 12, 2007, during a severe windstorm, a mature maple tree approximately 100 feet high crashed onto the insured premises.

10. Later that evening, a claim was made by telephone with Liberty Mutual. On or about June 15, 2007, an adjuster with Liberty Mutual, visited the house and toured the damage with Plaintiff, Jonathan J. Bart. Mr. Bart provided Mr. Jones with photographs of the damage, as Mr. Jones had not been able to visit the premises before the tree was removed from the house. At the time of Mr. Jones' visit, there was moderate to severe damage to the front of the house, the right (north) side of the house and the front, right center quadrant and chimney area of the roof. The gutter system was destroyed and the front porch and railing were badly damaged.

11. Mr. Jones informed Mr. Bart that he would adjust the loss within thirty (30) days and provide a detailed estimate of the damages. There was no request that Mr. Bart go out and get his own estimates.

12.　　When, after thirty (30) days, there was no response from Mr. Jones nor any follow-up, Mr. Bart left repeated messages with Mr. Jones, but received no response. In late July, 2007, Mr. Bart contacted Mr. Jones' supervisor, Sean McFadden, in Pittsburgh to inquire about the adjustment. Mr. McFadden informed Mr. Bart that Mr. Jones had taken a leave of absence "for personal reasons", and that he would assign another adjuster to come out and adjust the loss.

13.　　When no one came to the house, Mr. Bart again called Mr. McFadden and asked him to come out personally to inspect the damage. Mr. McFadden stated that he would do so and call Mr. Bart back to arrange a visit.

14.　　Instead, without ever visiting the house, Mr. McFadden issued a purported adjustment on August 1, 2007, a copy of which is attached hereto as Exhibit "B." Not only did he misspell the name of the insureds, he misstated the date of loss and purported to base the adjustment on a inspection purportedly made on July 27, 2007.

15.　　There was no visit arranged for July 27, 2007 nor did any such visit occur. Rather, the estimate appears to have been based upon an earlier visit to the house arranged by Mr. Jones.

16.　　The estimate of the damage was far below the actual and reasonable value of the damage. Although the home would require a complete restuccoing of two sides of the house and the repair of most of the roof, the estimate estimated a cost to repair a three story stone and stucco house of $5,627.83, and payment for the claim after deductible and deduction for depreciation of $4,034.58.

17.　　Even if this "estimate" were reasonable, which it was not, the policy specifically provided that there was to be no deduction for depreciation. The effect of Mr. McFadden's

estimate, which required repairs to be made before the depreciation would be paid to the insured, was that repairs costing approximately $80,000 would have to be advanced by the Barts, only to receive back approximately one-sixteenth of the actual loss.

18. When Mr. Bart called Mr. McFadden to complain about this ludicrous estimate, he eventually was told to get his own estimates and submit them to the insurer.

19. When those estimates were finally obtained, the damages were estimated at $78,972.50, after competitive estimates were obtained for the damage.

20. Only after suit was brought, Liberty Mutual requested another opportunity to adjust the loss. The Barts agreed to that request and received a new estimate, a year and a half after the original damage, of approximately $12,000.00, an estimate which once again improperly deducted depreciation.

21. Mr. Bart upon receiving the new “estimate” offered to allow Liberty Mutual to repair the home, as it is its right under the policy, if it believed it could make the repairs for $12,000.00. Liberty Mutual refused.

22. At this point, a year and a half after the residence was damaged, the damage remains severe to the house. There is a hole in the front of the roof, moderate to severe damage through the middle of the roof and the chimney, and the front of the house looks like it was hit with a mortar shell. According to the estimates received by Mr. Bart, the amount offered by Liberty Mutual would only pay for the repairs to the trim, porch, stairs and lights. The roofing repair, painting, stucco and gutter repairs are approximately $60,000 - - for which no compensation has been offered.

**COUNT I - BREACH OF CONTRACT**

23. The Barts repeat and incorporate by reference their allegations contained in paragraphs 1 through 22 as if fully set forth at length herein.

24. Pursuant to the contract of insurance with Liberty Mutual, the damage suffered as a result of the tree falling on their house had the reasonable repair value of $78,972.50.

25. In violation of the policy, Liberty Mutual failed to timely adjust the loss and base the adjustment which was sent on August 1, 2007 upon Mr. McFadden's own low ball construction of papers he reviewed from Mr. Jones. Mr. McFadden, who purported to adjust the loss, never visited the house, never saw the damage and lied when he told Mr. Bart that he would visit and adjust the claim personally.

26. The failure to properly and reasonably adjust the loss and the failure to offer a settlement in the reasonable value of the damage is a violation of the contract of insurance, for which the Barts are entitled to compensation.

27. By reason of the foregoing, Plaintiffs are entitled to damages of $78,972.50, before deduction of approximately $14,000 paid to date.

WHEREFORE, Plaintiffs demand judgment in the amount of $64,972.50, together with interest, costs and such other and further relief as the Court may deem just and proper.

**COUNT II – BAD FAITH 42 P.S. §8371**

28. The Barts repeat and incorporate by reference their allegations contained in paragraphs 1 through 27 as if fully set forth at length herein.

29. Liberty Mutual breached its duty of good faith to its insured by (1) failing to timely adjust the loss; (2) failing to allow the adjuster who visited the home to adjust the loss; (3) having a manager who never visited the home and had no personal knowledge sufficient to

adjust the loss to perform such an adjustment; (4) adjusting the loss in extreme bad faith, in which the purported loss was far greater than the $4,000 offered by Liberty Mutual; (5) requiring the insured to go out and get his own estimates in order to reconsider the adjustment; (6) performing a second adjustment a year and a half after the loss which estimated the damages as approximately three times the amount of the original damages, thus evidencing that the initial adjustment was in bad faith, but still providing an adjustment for far less than the reasonable value of the repairs; (7) failing to obtain any estimates to perform repairs; (8) attempting to deduct depreciation in violation of the policy; and (9) generally put all of the onus on the insureds to document their loss rather than fairly and timely adjust the loss.

30.   These failures constitute egregious bad faith under the Pennsylvania Bad Faith Statute, 42 P.S. §8371.

31.   Liberty Mutual had no reasonable basis for denying Plaintiffs the benefits to which they were due under their policy and, by fabricating an adjustment, Mr. McFadden knew or recklessly disregarded the lack of reasonable basis in adjusting the claim as he purported to do so in his August 1, 2007 letter.

32.   By reason of the foregoing, Defendant has violated the duties of an insurance company set forth in 42 P.S. §8371 and Plaintiffs re entitled to damages in the form of the value of the loss ($78,972.50), together with interest on the claim from July 12, 2007 and the prime rate plus 3%, together with punitive damages and attorneys' fees.

WHEREFORE, Plaintiffs demand judgment on Count II of the Complaint for bad faith in the amount of $66,000.00 (the loss after payments made to date) together with interest at 3 5 above prime, punitive damages, court costs and attorneys' fees.

Respectfully submitted,

**WILENTZ, GOLDMAN & SPITZER, P.A.**

**BY:** ______________________
Jonathan J. Bart, Esquire

Date: March 4, 2009

#3144176 (999999.185)

**VERIFICATION**

JONATHAN J. BART, ESQUIRE, hereby verify that the facts set forth in the foregoing pleading are true and correct to the best of my knowledge, information and belief. I understand that the statements therein are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

**WILENTZ, GOLDMAN & SPITZER, P.A.**

Date: March 4, 2009

BY: ______________________
Jonathan J. Bart, Esquire

**CERTIFICATE OF SERVICE**

I, Jonathan J. Bart, certify that a true and correct copy of the foregoing pleading was served on March 4, 2009 by United States First Class Mail, postage prepaid upon the following:

**Pamela A. Carlos, Esquire**
**1601 Market Street**
**16th Floor**
**Philadelphia, PA 19103**

WILENTZ GOLDMAN & SPITZER, P.A.

BY: ______________________
Jonathan J. Bart, Esquire

# EXHIBIT "A"

77RENEWAL A

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS
THE FIRST LIBERTY INSURANCE CORPORATION
BOSTON, MASSACHUSETTS

POLICY NUMBER
H36-288-012836-607 7 THESE DECLARATIONS EFFECTIVE 03/27/07 CLIENT# 000000000005534

NAMED INSURED AND MAILING ADDRESS
JONATHAN BART
MARY BART
6664 LINCOLN DR
PHILADELPHIA PA 19119-3118

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

POLICY PERIOD: 03/27/07 TO 03/27/08
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES
AGENT:
ROBERT RUFF
(215) 379-1840

SERVICE: 800-869-4009
CLAIMS: 800-225-2467

SECTION I AND II: COVERAGES AND LIMITS UNDER YOUR LIBERTYGUARD HOMEOWNERS POLICY

| | | |
|---|---|---|
| I: COVERAGE A | YOUR DWELLING WITH EXPANDED REPLACEMENT COST | $559,500 |
| COVERAGE B | OTHER STRUCTURES ON RESIDENCE PREMISES | $55,950 |
| COVERAGE C | PERSONAL PROPERTY WITH REPLACEMENT COST | $419,625 |
| COVERAGE D | LOSS OF USE OF YOUR RESIDENCE PREMISES | ACTUAL LOSS SUSTAINED |
| II: COVERAGE E | PERSONAL LIABILITY (EACH OCCURRENCE) | $300,000 |
| COVERAGE F | MEDICAL PAYMENTS TO OTHERS (EACH PERSON) | $1,000 |

DEDUCTIBLE: LOSSES COVERED UNDER SECTION I ARE SUBJECT TO A DEDUCTIBLE OF $500

PREMIUM SUMMARY: FORMS AND ENDORSEMENTS SHOWN ARE MADE PART OF YOUR POLICY

| | | | |
|---|---|---|---|
| HO 00 03 04 91 | BASE COST FOR THE COVERAGES AND LIMITS SHOWN ABOVE | | $ 4457 |
| HO 04 53 04 91 | CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY | $5,000 | $ 3 |
| FMHO-1183 | HOMEPROTECTOR PLUS | | $ 446 |
| SECTION II COVERAGES EXTENDED: | | | |
| HO 24 82 04 91 | PERSONAL INJURY | | $ 8 |
| | COVERAGE E INCREASED LIMIT | | $ 18 |
| PREFERRED RISK RATING PLAN DISCOUNTS: 9.0% | | | |
| 6.0% INSURANCE TO VALUE CREDIT | | | -$ 267 |
| 3.0% INFLATION PROTECTION CREDIT | | | -$ 134 |
| PROTECTIVE DEVICE CREDITS: 6.0% | | | -$ 267 |
| 2% SMOKE DETECTOR | 4% FIRE EXTINGUISHERS & DEAD BOLT | | |
| MULTIPLE POLICY DISCOUNT 10% | | | -$ 446 |
| SAFE HOMEOWNER PROGRAM | | | -$ 669 |
| NET PREMIUM | | | $ 3149 |

(INCLUDES GROUP SAVINGS PLUS® DISCOUNT)

FMHO 775 R3

COUNTERSIGNED 02/05/07

SECRETARY PRESIDENT

AUTHORIZED REPRESENTATIVE

77RENEWAL A

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS
THE FIRST LIBERTY INSURANCE CORPORATION
BOSTON, MASSACHUSETTS

PAGE 02

POLICY NUMBER
H36-288-012836-607 7

THESE DECLARATIONS EFFECTIVE 03/27/07 CLIENT# 000000000005534

NAMED INSURED AND MAILING ADDRESS
JONATHAN BART
MARY BART
6664 LINCOLN DR
PHILADELPHIA PA 19119-3118

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 03/27/07 TO 03/27/08
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT:
ROBERT RUFF
(215) 379-1840

FOR SERVICE CALL OR WRITE:
PO BOX 52102
PHOENIX AZ 85072

SERVICE: 800-869-4009
CLAIMS: 800-225-2467

(CONTINUED FROM PREVIOUS PAGE)

OTHER ENDORSEMENTS MADE PART OF YOUR POLICY:

| | |
|---|---|
| HO 01 37 12 98 | SPECIAL PROVISIONS |
| HO 04 96 04 91 | NO SECII/LIMIT I-DAYCARE |
| HO-291 01/81 | PENNSYLVANIA NOTICE |
| FMHO-1097 1/97 | UNDERGROUND FUEL STORAGE |
| FMHO-2493 5/03 | AMENDATORY ENDORSEMENT |
| FMHO-2835 | INFLATION PROTECTION |
| HO 04 16 04 91 | PROTECTIVE DEVICES |
| FMHO-976 05/92 | LEAD POISONING EXCLUSION |
| 2320 10/89 | MASTER ENDORSEMENT |
| FMHO-2199 R1 | AMENDATORY MOLD END |
| FMHO-2934 7/04 | AMENDMT POL DEFINITIONS |

SPECIAL STATE PROVISIONS:

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

MORTGAGEE 1:
SELECT PORTFOLIO SERVICING INC
ISAOA
LN 0009961855
PO BOX 2967
PHOENIX AZ 85062

HANDLING REQUIREMENTS: DECLARATION TO MORTGAGEE
BILL TO MORTGAGEE FUTURE BILLS TO MORTGAGEE

FMHO 775 R3

COUNTERSIGNED 02/05/07

Dexter R. Legg
SECRETARY

Edmund F Kelly
PRESIDENT

Sherry Bohn
AUTHORIZED REPRESENTATIVE

LIBERTYGUARD DELUXE HOMEOWNERS POLICY DECLARATIONS
THE FIRST LIBERTY INSURANCE CORPORATION
BOSTON, MASSACHUSETTS

POLICY NUMBER
H36-288-012836-607 7

THESE DECLARATIONS EFFECTIVE 03/27/07 CLIENT# 000000000005534

NAMED INSURED AND MAILING ADDRESS
JONATHAN BART
MARY BART
6664 LINCOLN DR
PHILADELPHIA PA 19119-3118

RESIDENCE PREMISES INSURED:
SAME AS MAIL ADDRESS

POLICY PERIOD: 03/27/07 TO 03/27/08
12:01AM STANDARD TIME AT THE
RESIDENCE PREMISES

AGENT: ROBERT RUFF
(215) 379-1840

(CONTINUED FROM PREVIOUS PAGE)

FMHO 775 R3 COUNTERSIGNED 02/05/07 PRU NUM: 282H930629 AGT NUM: 884997 AGT OFF: BXMT DIST CHAN: 002 APT 11CAP FACT: 1.000

| STATE | #FAM/APTS | COVERAGE A/C | CONST | COUNTY | TERR | PREM GRP | PROT | X | HYDRANT | FIRE DEPT. | PCP | YR BUILT | UND HANDLING | CREDIT | N/R | 1ST YR | SALES REP | SALES OFF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 37 | 1 | 528800 | 03 | 051 | 004 | 000 | 02 | 0 | B | A | 2 | 05 | 000 | 3149 | 2 | 92 | 3990 | 694 |

RATED AS: PHILADELPHIA

SHP 00000 MAILING 00 PLAN 91
CREDIT 08 HV LL

PROT DEV- 580 TAX TERR- 7329

TIER 03

/


Liberty
Mutual

LIBERTY MUTUAL GROUP
PO BOX 52102
PHOENIX AZ 85072
800-869-4009

FEBRUARY 5, 2007

JONATHAN BART
MARY BART
6664 LINCOLN DR
PHILADELPHIA PA 19119-3118

**RE:** H36-288-012836-607
**Policy Effective:** 03/27/07

Dear Valued Customer,

Thank you for your continued business and the trust you have placed with Liberty Mutual by choosing to insure with us. We appreciate this responsibility and strive to provide you with high-quality protection and personal service. We value your relationship with Columbia University Alumni Association and are pleased to offer the savings you receive because of your relationship with them.

Your homeowners renewal policy is enclosed. Please review it carefully and make sure your information is up to date and that you have the coverages you need. If you have any questions or would like a personal review of your insurance needs, please contact your Prudential agent, or call us at 800-869-4009 and a representative will be happy to assist you.

Your homeowners policy comes with many benefits and services, some of which include:

- **24-Hour Claims Reporting :** You can call us with your claims information anytime, 24 hours a day, 7 days a week at 800-2-CLAIMS (800-225-2467). Hearing impaired customers who use a TDD/TTY device can contact us at 800-243-9801. You can also report your claim online at www.libertymutual.com/lm/insurance.
- **24-Hour Homeowner Emergency Home Repair :** We'll send someone to your home at any time of day or night in the event that you have a covered loss that needs to be protected from further damage.*
- **eService :** You can choose when and how you want to do business with us with eService. Simply go online at www.libertymutual.com/lm/insurance and click on "My Policies" to view your policies and request changes, view and pay your bill, report a claim and view claims history.
- **Personal Property Inventory Program :** Conducting a home inventory before a loss occurs is important and will help expedite the claims process. And, we make it easy with our three-step online program available to you free on our website.
- **Contractor Network Referral Program :** Through this network, we can arrange for a contractor to contact you, prepare an estimate, and complete repairs, which are guaranteed for one year.*
- **Personal Property Replacement Service :** Drawing from a database of hundreds of thousands of items, we can locate the exact items you lost, or the closest match, and ship them to you within 48 hours. **
- **Safety Materials :** We are pleased to provide our customers with safety information, including:
  - *Liberty Lines*, our magazine that provides safety tips for you and your family
  - Brochures, videos, and safety tips, available online and by calling your insurance representative
- **Liberty Mutual Rewards :** Through our website, www.libertymutual.com/lm/insurance, you have access to auto-, home-, and family-related discounts from nationally known companies.

Thank you for insuring with Liberty Mutual. We appreciate your business.

**Helping People Live Safer, More Secure Lives**

Sincerely,

K. D. Howard

K. D. Howard
Manager, Customer Response Center
The First Liberty Insurance Corporation

* Availability may vary by area.

** Service provided through Insurers World, Canton, MA.



# LibertyGuard

## Deluxe Homeowners Policy

**Please read your policy and each endorsement carefully.**

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NON ASSESSABLE**

Liberty Mutual Group

# LIBERTYGUARD DELUXE HOMEOWNERS POLICY

## HO 00 03 EDITION 04 91

## TABLE OF CONTENTS

Page

Agreement........1
Definitions........1

**SECTION I - PROPERTY COVERAGES**

Coverage A Dwelling........1
Coverage B Other Structures........2
Coverage C Personal Property........2
Coverage D Loss of Use........3
Additional Coverages........3
Debris Removal........3-4
Reasonable Repairs........4
Trees, Shrubs and Other Plants........4
Fire Department Service Charge........4
Property Removed........4
Credit Card, Fund Transfer Card, Forgery and Counterfeit Money........4
Loss Assessment........4-5
Collapse........5
Glass or Safety Glazing Material........5
Landlord's Furnishings........5-6

**SECTION I - PERILS INSURED AGAINST**

Coverage A Dwelling and Coverage B Other Structures........6
Coverage C Personal Property........6-7

**SECTION I - EXCLUSIONS**

Ordinance or Law........7
Earth Movement........7-8
Water Damage........8
Power Failure........8
Neglect........8
War........8
Nuclear Hazard........8
Intentional Loss........8
Weather Conditions........8
Acts or Decisions........8
Faulty, Inadequate or Defective........8

**SECTION I - CONDITIONS**

Insurable Interest and Limit of Liability........8
Your Duties After Loss........8-9
Loss Settlement........9-10
Loss to a Pair or Set........10
Glass Replacement........10

Page

Appraisal........10
Other Insurance........10
Suit Against Us........10
Our Option........10
Loss Payment........10
Abandonment of Property........10
Mortgage Clause........10
No Benefit To Bailee........10
Nuclear Hazard Clause........10-11
Recovered Property........11
Volcanic Eruption Period........11

**SECTION II - LIABILITY COVERAGES**

Coverage E Personal Liability........11
Coverage F Medical Payments to Others........11

**SECTION II - EXCLUSIONS**

Coverage E Personal Liability and Coverage F Medical Payments to Others........11-12
Coverage E Personal Liability........12-13
Coverage F Medical Payments to Others........13

**SECTION II - ADDITIONAL COVERAGES**

Claim Expenses........13
First Aid Expenses........13
Damage to Property of Others........13-14
Loss Assessment........14

**SECTION II - CONDITIONS**

Limit of Liability........14
Severability of Insurance........14
Duties After Loss........14-15
Duties of an Injured Person........15
Payment of Claim........15
Suit Against Us........15
Bankruptcy of an Insured........15
Other Insurance........15

**SECTIONS I AND II - CONDITIONS**

Policy Period........15
Concealment or Fraud........15
Liberalization Clause........15
Waiver or Change of Policy Provisions........15
Cancellation........15-16
Non-Renewal........16
Assignment........16
Subrogation........16
Death........16
***MUTUAL POLICY CONDITIONS**........16

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

# HOMEOWNERS 00 03 04 91

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
2. "Business" includes trade, profession or occupation.
3. "Insured" means you and residents of your household who are:
   a. Your relatives; or
   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";
   d. With respect to any vehicle to which this policy applies:
      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or
      (2) Other persons using the vehicle on an "insured location" with your consent.
4. "Insured location" means:
   a. The "residence premises";
   b. The part of other premises, other structures and grounds used by you as a residence and:
      (1) Which is shown in the Declarations; or
      (2) Which is acquired by you during the policy period for your use as a residence;
   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
   d. Any part of a premises:
      (1) Not owned by an "insured"; and
      (2) Where an "insured" is temporarily residing;
   e. Vacant land, other than farm land, owned by or rented to an "insured";
   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
   g. Individual or family cemetery plots or burial vaults of an "insured"; or
   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.
5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
   a. "Bodily injury"; or
   b. "Property damage."
6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.
7. "Residence employee" means:
   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or
   b. One who performs similar duties elsewhere not related to the "business" of an "insured."
8. "Residence premises" means:
   a. The one family dwelling, other structures, and grounds; or
   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

**COVERAGE B - Other Structures**

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or
2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**COVERAGE C - Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";
2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.
2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.
3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.
4. $1000 on trailers not used with watercraft.
5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.
6. $2000 for loss by theft of firearms.
7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.
8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.
9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.
10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.
11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:
    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;
    b. Is away from the "residence premises"; and
    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:
    a. Accessories or antennas; or
    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;
2. Animals, birds or fish;
3. Motor vehicles or all other motorized land conveyances.

   This includes:
   a. Their equipment and accessories; or
   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

This coverage:

  a. Does not increase the limit of liability that applies to the covered property;

  b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

  a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

  b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

  c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

  d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

  a. By a resident of your household;

  b. By a person who has been entrusted with either type of card; or

  c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

  a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

  b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

  c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

   We cover:

   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

    a. **Fire or lightning.**

    b. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    c. **Explosion.**

    d. **Riot or civil commotion.**

    e. ~~**Aircraft,** including self-propelled missiles and~~ spacecraft.

    f. **Vehicles.**

    g. **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

    h. **Vandalism or malicious mischief.**

    i. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

    j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

    k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    (1) To the system or appliance from which the water or steam escaped;

    (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

    (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;
2. Caused by:
   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:
      (1) Maintain heat in the building; or
      (2) Shut off the water supply and drain the system and appliances of water;
   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1) Fence, pavement, patio or swimming pool;
      (2) Foundation, retaining wall, or bulkhead; or
      (3) Pier, wharf or dock;
   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;
   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
   e. Any of the following:
      (1) Wear and tear, marring, deterioration;
      (2) Inherent vice, latent defect, mechanical breakdown;
      (3) Smog, rust or other corrosion, mold, wet or dry rot;
      (4) Smoke from agricultural smudging or industrial operations;
      (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;
      (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pave-ments, patios, foundations, walls, floors, roofs or ceilings;
      (7) Birds, vermin, rodents, or insects; or
      (8) Animals owned or kept by an "insured."

   If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.
3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

### COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**
4. **Riot or civil commotion.**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles.**
7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**
9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   This peril does not include loss caused by theft:

   a. Committed by an "insured";

   b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

   c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

   This peril does not include loss caused by theft that occurs off the "residence premises" of:

   a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

   b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

   c. Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.
12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped;

    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

    a. Maintain heat in the building; or

    b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

    This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption;

landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage**, meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, re-pair, construction, renovation, remodel-ing, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest base-ment floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. Reach an agreement with you;

   b. There is an entry of a final judgement; or

   c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

   The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

   If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or un-controlled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or
2. To a person off the "insured location," if the "bodily injury":
   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;
   b. Is caused by the activities of an "insured";
   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or
   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":
   a. Which is expected or intended by the "insured";
   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
   c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":
      (1) On an occasional basis if used only as a residence;
      (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or
      (3) In part, as an office, school, studio or private garage;
   d. Arising out of the rendering of or failure to render professional services;
   e. Arising out of a premises:
      (1) Owned by an "insured";
      (2) Rented to an "insured"; or
      (3) Rented to others by an "insured";
      that is not an "insured location";
   f. Arising out of:
      (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";
      (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or
      (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(1) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employees" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

by the "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Under-writers;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I of this policy;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

**4. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

**2. Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

**3. Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II -CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our ~~written~~ consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

| *MUTUAL POLICY CONDITIONS |
|---|

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

Dexter R. Legg
SECRETARY

Edmund F. Kelly
PRESIDENT

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1990

 Liberty
Mutual

# NOTICE OF PRIVACY POLICY

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you apply for insurance, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

## 1. INFORMATION WE MAY COLLECT

We collect information about you from:

- Applications or other forms you complete;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services, the Medical Information Bureau and medical providers; and,
- Visits to our Liberty Mutual website.

## 2. TYPES OF INFORMATION WE MAY DISCLOSE

We may disclose the following about you:

- Information from your application or other forms, such as your name, address, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and,
- Information we receive from third parties, such as your motor vehicle records and claims history.

## 3. TO WHOM INFORMATION MAY BE DISCLOSED

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:

- A third party that performs services for us, such as claims investigations, inspections, and appraisals;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial or research studies which are subject to appropriate confidentiality agreements;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers, which are subject to appropriate confidentiality agreements; and
- As otherwise permitted by law.

## 4. HOW WE PROTECT INFORMATION

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies.

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance, annuity and financial products and services: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty Life Securities LLC, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, LM Personal Insurance Company, Liberty Mutual Mid-Atlantic Insurance Company and LM General Insurance Company.

# AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

### SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**
Item 1. is amended as follows:
We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

**COVERAGE C - Personal Property**

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:

12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

**Property Not Covered** under **COVERAGE C - Personal Property**

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used solely to service an "insured's" residence; or
b. Designed for assisting the handicapped;

Item 10. is added as personal property items not covered.
10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse**.
With respect to this Additional Coverage:
(1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.
(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

### SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**
The following is added to item **2.b.**
(4) Footing(s)

The following are added to item **2.e.** Any of the following:
(10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

The final paragraph of Item 2. is further revised as follows:

If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

SECTION II - EXCLUSIONS

Item **1.a.** under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"

(1) is of a different kind, quality, or degree than initially expected or intended; or

(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

SECTION II - ADDITIONAL COVERAGES

Item **1.c.** under **Claims Expenses** is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS - PENNSYLVANIA

Throughout this policy, the following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C - PERSONAL PROPERTY**

**SPECIAL LIMITS OF LIABILITY**

Items **10.** and **11.** are deleted and replaced by the following (these are Items **7.** and **8.** in Form **HO 00 08**):

**10.** $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

**a.** Accessories or antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **10.**

**11.** $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

**a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

**b.** Is away from the "residence premises"; and

**c.** Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

**a.** Accessories and antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **11.**

**PROPERTY NOT COVERED**

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

**b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

**(1)** Accessories or antennas; or

**(2)** Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item **3.b.**

The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

**a.** Used to service an "insured's" residence; or

**b.** Designed for assisting the handicapped;

**COVERAGE D - LOSS OF USE**

For all forms other than **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

**1.** If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

**1.** If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Copyright, Insurance Services Office, Inc., 1998

1. **Debris Removal** is deleted and replaced by the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense. (The second sentence of this paragraph does not apply to Form **HO 00 08.**)

   b. **Fallen Trees**

      (1) If circumstances of a loss meet those specified in **(2)** below, we will pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

         **(a)** Your tree(s) felled by the peril of Windstorm or Hail;

         **(b)** Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet (Forms **HO 00 02, HO 00 03, HO 00 04** and **HO 00 06** only); or

         **(c)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C.**

      The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

      (2) Tree removal coverage as described in **b.(1)** above applies only if:

         **(a)** The tree damages a structure covered under this policy; or

         **(b)** Windstorm or Hail or Weight of Ice, Snow or Sleet causes damage to a structure covered under this policy and the Pennsylvania Governor declares the area in which the "residence premises" is located to be a disaster area as a result of such weather conditions.

ADDITIONAL COVERAGES

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

   **a.** We cover:

      (1) For all forms other than **HO 00 04** and **HO 00 06,** the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

         **(a)** Form **HO 00 04,** the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

         **(b)** Form **HO 00 06,** the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A;** and

      (2) For all forms other than **HO 00 04** and **HO 00 06,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

         **(a)** Form **HO 00 04,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

         **(b)** Form **HO 00 06,** the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage **A;** and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   **b.** This coverage does not include loss:

      (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

      (2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

 Copyright, Insurance Services Office, Inc., 1998

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms **HO 00 01** and **HO 00 08,** we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Forms **HO 00 01** and **HO 00 08.**)

The following Additional Coverage is added to all forms except **HO 00 08.** With respect to Form **HO 00 04,** the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** (or for Form **HO 00 04,** you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage **10.** in Forms **HO 00 01** and **HO 00 06.**)

**SECTION I - PERILS INSURED AGAINST**

Under Form **HO 00 03, Coverage A - Dwelling** and **Coverage B - Other Structures,** Item **2.e.(3)** is deleted and replaced by the following:

(3) Smog, rust or other corrosion, fungus, mold, wet or dry rot;

In Endorsements:

**HO 00 15,** Special Personal Property Coverage, this is Item **1.b.(4)(c)** under Section **I** - Perils Insured Against.

**HO 04 14,** Special Computer Coverage, this is Item **B.(3)(c)** under Perils Insured Against.

**HO 17 31,** Unit-Owners Coverage **C,** this is Item **3.d.(3)** under Section **I** - Perils Insured Against.

**HO 17 32,** Unit-Owners Coverage **A,** this is Item **2.e.(3)** under Perils Insured Against.

**SECTION I - EXCLUSIONS**

**1. Ordinance or Law** is deleted and replaced by the following:

**1.** Ordinance Or Law, meaning any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in all forms other than **HO 00 03,** and **1.a.(1)** in the Form **HO 00 03,** does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

 Copyright, Insurance Services Office, Inc., 1998

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion **1.a.** in Form **HO 00 03.**)

2. **Earth Movement** is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   a. Fire; or

   b. Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion **1.b.** in Form **HO 00 03.**)

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion **1.d.** in Form **HO 00 03.**)

**SECTION I - CONDITIONS**

Under **3. Loss Settlement** in Forms **HO 00 02** and **HO 00 03,** Item **b.(1)** is deleted and replaced by the following:

**b.** Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged; or

(c) The necessary amount actually spent to repair or replace the damaged building.

The replacement cost will not exceed that necessary for like construction and use on the same premises; regardless of whether the replacement building or repaired building is located on the same or a different premises.

3. **Loss Settlement**

Under Form **HO 00 06,** Item **b.(2)** is deleted and replaced by the following:

(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

9. **Our Option** is deleted and replaced by the following:

9. **Our Option**

We may repair or replace any part of the damaged property with like property if we give you written notice of our intention to do so within 15 working days after we receive your signed, sworn proof of loss.

**SECTION II - LIABILITY COVERAGES**

Item **1. Coverage E - Personal Liability** is deleted and replaced by the following:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable; and

Under Coverage **F** - Medical Payments To Others:

Medical expenses do not include expenses for funeral services.

**SECTION II - EXCLUSIONS**

Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others,** Item **a.** is deleted and replaced by the following:

**a.** Which is expected or intended by one or more "insureds";

**SECTION II - ADDITIONAL COVERAGES**

Under **1. Claim Expenses,** the following paragraph is added:

**e.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

Copyright, Insurance Services Office, Inc., 1998

SECTIONS I AND II - CONDITIONS

2. **Concealment Or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

a. Under Section **I** - Property Coverages, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section **I** - Property Coverages if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under Section **II** - Liability Coverages, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

5. **Cancellation**

Paragraph **b.** is deleted and replaced by the following:

b. We may cancel this policy only for the reasons stated below by notifying the "insured" in writing of the date cancellation takes effect. This cancellation notice may be delivered to or mailed to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address.

Proof of mailing will be sufficient proof of notice.

(1) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying the "insured" named in the Declarations at least 30 days before the cancellation takes effect.

(2) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons by notifying the "insured" named in the Declarations at least 30 days prior to the proposed cancellation date:

(a) This policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us;

(b) There has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

(c) There is a substantial increase in hazard insured against by reason of willful or negligent acts or omissions by the "insured";

(d) The "insured" has failed to pay the premium by the due date, whether payable to us or to our agent or under any finance or credit plan; or

(e) For any other reason approved by the Pennsylvania Insurance Commissioner.

This provision shall not apply if the named "insured" has demonstrated by some overt action to us or to our agent that the "insured" wishes the policy to be cancelled.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

6. **Nonrenewal** is deleted and replaced by the following:

6. **Nonrenewal**

We will not fail to renew this policy except for one of the reasons referred to in the Cancellation Provision of this endorsement. We may refuse to renew for one of the listed reasons by mailing to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address, written notice at least 30 days prior to the expiration date of this policy.

 Copyright, Insurance Services Office, Inc., 1998

This provision does not apply if:

a. We have indicated our willingness to renew and the "insured" has failed to pay the premium by the due date; or

b. The named "insured" has indicated to us or our agent that the "insured" does not wish the policy to be renewed.

Delivery of such written notice by us to the "insured" named in the Declarations at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing.

**9. Death**

Paragraph **b.** is deleted and the following added:

**b.** Insurance under this policy will continue as provided in **(1)** or **(2)** below, whichever is later:

**(1)** For 180 days after your death regardless of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date; or

**(2)** Until the end of the policy period shown in the Declarations, unless your premises and property, covered under the policy at the time of your death, is sold prior to that date.

Coverage during the period of time after your death is subject to all the provisions of this policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period;

**c.** "Insured" includes:

**(1)** Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

**(2)** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1998


Liberty
Mutual

*BILLING INFORMATION*

We know flexibility and convenience are important. That is why we offer a variety of billing and payment methods from which to choose. When your premium notice arrives in the next few days, you may choose a method of payment that best meets your individual needs.

*THE CHOICE IS YOURS*

- You may pay the entire premium in full without additional charge. Your payment must be received by the due date shown on the premium notice.
- You may pay the premium in multiple installments (minimum $30) after a down payment. With this option, each bill will include a $4 billing expense fee (shown under "Financial Charge"). Your representative can provide you with the various installment options available to you.
- You may sign up for Electronic Funds Transfer (EFT). With this method, you can save money as there are no installment fees. To sign up, simply select that option on the remittance portion of your bill when you make your next payment, or you can go online at www.libertymutual.com/lm/insurance and use eService. The "My Policies" menu will take you to an EFT form you can complete and mail or fax.
- You may also pay your bill online, rather than writing out a check and sending it via traditional mail service. Follow the directions above to get to eService. If you don't already have an eService account, you will need to register your policies.

If you have any questions please contact your Prudential agent, or call us at 800-869-4009 and a representative will be happy to assist you.

Thank you for insuring with Liberty Mutual. We appreciate your business.



# HOMEPROTECTOR PLUS ENDORSEMENT

**A.  INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES**

Section I, Coverage C - Personal Property.  Special Limits of Liability.  Paragraph 5 is replaced with:

5.  Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage.  The following exclusions and limitations apply:

    a.  $2500 for loss by theft, subject to a maximum of $1000 for any one article.

    b.  The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

    c.  $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any article.

    d.  We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

**B.  REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY**

You must meet the following additional Section I Condition for this provision to apply:

17.  Additions or Changes to Dwelling - Notice to Company.  You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3. Loss Settlement, is deleted and replaced by the following:

3.  Loss Settlement.  Covered property losses are settled as follows:

    a.  The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

        (1)  We will pay the cost of repair or replacement, but not exceeding:

            (a)  The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

            (b)  With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (c)  With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

            (d)  The amount actually and necessarily spent to repair or replace the damage.

        (2)  We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

        However, if the cost to repair or replace the damage is both:

            (a)  Less than 5% of the amount of insurance in this policy on the building;

                and

            (b)  Less than $2500;

We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

b. Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace.

c. Personal property, carpeting and household appliances: at replacement cost but not exceeding the amount needed to repair or replace subject to the following:

(1) Our limit of liability for loss to Personal Property shall not exceed the smallest of the following:

(a) Replacement cost with a similar item of like kind and quality at the time of loss;

(b) The full cost of repair;

(c) Any special limit of liability described in the policy or stated in this endorsement; or

(d) The Coverage C limit of liability stated in the declarations, as modified by the Inflation Protection of the policy.

(2) This endorsement shall not apply to:

(a) Fine arts and items which, by their nature cannot be replaced with new items;

(b) Articles whose age or history contribute substantially to their value including souvenirs or collector's items.

(c) Property that is unusable for the purpose for which it was originally intended due to age or historic condition.

(3) We will not pay for any loss to personal property under this endorsement until actual repair or replacement is complete.

d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

**C. INCREASED LIMIT - COVERAGE D**

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

**D. ADDITIONAL COVERAGES**

REFRIGERATORS AND FREEZERS CONTENTS COVERAGE

We cover the contents of deep freeze or refrigerated units on the residence premises from the perils of:

1. Fluctuation or total interruption of electric power, either on or off premises, resulting from conditions beyond the control of the "insured".

2. Mechanical breakdown of any refrigeration equipment on premises including the blowing of fuses or circuit breakers.

We do not cover loss caused by the following additional exclusions:

1. Disconnection or termination of power due to turning off any switch.

2. Inability of power source to provide sufficient power due to government order, lack of fuel or lack of generating capacity to meet demand.

SPECIAL LIMIT - We will not pay more than $500 of your loss of refrigerator or freezer contents resulting from the above perils.

All other provisions of this policy apply.

LOCK REPLACEMENT COVERAGE

We will pay up to $250 for replacing the locks or cylinders on the exterior doors of the residence premises when your keys have been stolen. The theft of the keys must be reported to the police for this coverage to apply.

This coverage is additional insurance. No deductible applies to this coverage.

# HOMEOWNER AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

**DEFINITIONS**

The introductory paragraph of **Definitions** is amended to read:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and

(1) the spouse of the "named insured" shown on the Declarations, if a resident of the same household; or

(2) the partner in a civil union, registered domestic partnership, or similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.

Section (2), above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province in any other country.

"We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

**SECTIONS I AND II - CONDITIONS**

The introductory paragraph of **9. Death.** is amended to read:

If any person named in the Declarations or the spouse, if a resident of the same household; or the partner in a civil union, registered domestic partnership or similar union or partnership, if a resident of the same household, dies:

# PENNSYLVANIA NOTICE

**IL 09 10/HO 291**
(Ed. 01 81)

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. surveys;
2. consultation or advice; or
3. inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. to consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. if any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal policies and renewal certificates insuring risks located in Pennsylvania.

HO 04 96 04 91

# NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion **1.b.** of Section II - Exclusions;
2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";
3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item **8.** imposes that limit on "business" property on the "residence premises." (Item **8**. corresponds to item **5.** in Form **HO 00 08.**);
4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item **9.** imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item **9.** does not apply to adaptable electronic apparatus as described in Special Limit of Liability items **10.** and **11.** (Items **9.**, **10.** and **11.** correspond to items **6.**, **7.** and **8.** respectively in Form **HO 00 08.**)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

Coverage A, Dwelling;

Coverage B, Structure;

Coverage C, Personal Property;

and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

**METHOD**

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

a. The policy; or

b. The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.



Liberty
Mutual.

# LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2 any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

# UNDERGROUND FUEL STORAGE TANK EXCLUSION

**The following provision is added to and made part of your Homeowners Policy:**

**Section II - Exclusions**

**The Paragraph below is added:**

**Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":**

arising out of the release of fuel or fuel products from an "underground storage tank system."

"Underground storage tank system" means the underground tank, the fill pipe, the vent pipes, and all associated fixtures, including pipe and tubing which contains or conveys fuel or fuel products from the underground storage tank to the point of combustion.

All other provisions of this policy apply.

FMHO 1097 (Ed. 1-97) Liberty Mutual Group PF




**MASTER THE FIRST LIBERTY INSURANCE CORPORATION ENDORSEMENT**

The policy is amended by the following:

1. It is agreed that wherever the words "Liberty Mutual Fire Insurance Company" appear in this policy the words "The First Liberty Insurance Corporation" shall apply in place thereof.
2. It is further agreed that any statement that the policy is classified in a particular dividend class is deleted.
3. It is further agreed that all references to the named insured's membership in the company and entitlement to vote at meetings of the company, and to the place, date and time of the company's annual meeting are deleted.
4. It is further agreed that the Mutual Policy Conditions provision is deleted.

All other terms and conditions of the policy remain unchanged.

2320
(10/89) PF

HO 04 16 04 91

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91

Copyright, Insurance Services Office, Inc., 1990

**HOMEOWNERS**
**HO 04 53 04 91**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE

**Increased Limit**

For an additional premium, the limit of liability for Additional Coverage **6.**, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ __________*.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HO 24 82 04 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL INJURY

For an additional premium, under Coverage E - Personal Liability, the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;
2. Libel, slander or defamation of character; or
3. Invasion of privacy, wrongful eviction or wrongful entry.

Section II Exclusions do not apply to personal injury. Personal injury insurance does not apply to:

1. Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;
2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";
3. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";
4. Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
5. Civic or public activites performed for pay by an "insured"; or
6. Injury to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

All other provisions of this policy apply.

 Copyright, Insurance Services Office, Inc., 1990

AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT
**This endorsement changes your policy. Please read it carefully.**

DEFINITIONS
The following definition is added:
9. "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

SECTION I - PROPERTY COVERAGES
**Additional Coverages**
The following Additional Coverage is added:

11. **Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From A Covered Water Loss**

We will pay up to $5,000 for the **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting directly from a covered water loss. We will pay no more than $5,000 for this coverage during the policy period, regardless of the number of water damage losses or claims submitted.

**"Remediation"** means the reasonable and necessary treatment, containment, decontamination, removal or disposal of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by a covered water loss. **"Remediation"** includes payment for any loss of fair rental value, or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living, if **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** resulting from a covered water loss makes your residence premises uninhabitable. **"Remediation"** includes testing or investigation to detect, evaluate or measure **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**.

This Additional Coverage does not increase the limits of liability under Section I of the policy.

SECTION I - PERILS INSURED AGAINST
**Coverage A - Dwelling and Coverage B - Other Structures**
Paragraph **2.e. (3)** is deleted and replaced by the following:
(3) Smog, rust or other corrosion;

Paragraph **2.e. (9)** is added:
(9) Seepage, meaning continuous or repeated seepage or leakage of water, steam or fuel over a period of weeks, months or years:
a) From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
b) From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures, including walls, ceilings or floors.

SECTION I - EXCLUSIONS
Exclusion **1.i.** is added:
**i.** Except as provided by **Additional Coverage 11.**, damage caused by **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"** is excluded, even if resulting from a peril insured against under Section I. We do not cover **"Remediation"** of **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**, even if resulting from a peril insured against under Section I, except as provided by **Additional Coverage 11.**.

SECTION II - EXCLUSIONS
**Coverage E - Personal Liability and Coverage F - Medical Payments to Others**
Exclusion **1.m.** is added:
**m.** Arising out of or aggravated by, in whole or in part, **"Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus"**.

# EXHIBIT "B"





Liberty Mutual Group
Personal Market Claims
1550 Omega Drive
Pittsburgh, PA 15205
800-208-4002 – telephone
603-334-0382 - fax

August 1, 2007

Mr. & Mrs. Barts
6664 Lincoln Drive
Philadelphia, PA 19119-3118

**RE: CLAIM NO:** 008415727-01
**DATE OF LOSS:** June 9, 2007

Dear Mr. & Mrs. Barts,

Liberty Mutual appreciates the opportunity to be of service to you, especially in your time of need. Enclosed is the estimate for repairs for the damaged property covered under your Homeowners Policy with Liberty Mutual. The totals are listed at the end of the estimate and the prices used are the prevailing rates in the geographic area where the property is located. Please review this estimate with the contractor of your choice. **The payment for $4034.58 will be mailed separately.**

Should you elect to make changes or upgrades to your property you will be responsible for any additional expenses related to the changes and/or upgrades. No supplemental claim will be considered without prior approval.

Your Homeowners policy provides for replacement cost on dwelling repairs. However, we will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once repairs or replacement are complete, you may then make claim for recoverable depreciation. If the repairs cost less than the replacement cost figure, we will pay only the difference between the actual cash value and your actual repair expenses, if any difference.

To file a claim for recoverable depreciation, please submit the final line item billing indicating the total cost of the repairs and the completion of the repairs. The final billing should include the name, address and phone number of the vendor who completed the repairs.

Your payment was calculated as follows:

| | |
|---|---|
| $5626.83 | The cost of repairing damaged property (Coverage's A & B) |
| $ 873.25 | Recoverable Depreciation |
| $ 219.00 | Non-Recoverable Depreciation [fencing & sign post] |
| $ 500.00 | Applicable Deductible |
| $4034.58 | Payment issued for Net Claim Amount |

If, after reviewing your estimate you have any questions, please call me at 215-641-0400 extension 333.  If you prefer to communicate by E-mail, my E-mail address is sean.mcfadden@libertymutual.com.  When contacting me by E-mail, please include your claim number in the subject line.

Thank you for insuring with Liberty Mutual.

Sincerely,

Sean McFadden
Team Manager

Building

(U)

## Liberty Mutual Insurance Company

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

Insured: Jonathan Bart

Property: 6664 Lincoln Drive
Philadelphia, PA 19119

Claim Rep.: James V. Fasano — Cellular: (215) 284-1638

Business: 1550 Omega Drive
Pittsburgh, PA 15205-9805

Estimator: James V. Fasano — Cellular: (215) 284-1638

Business: 1550 Omega Drive
Pittsburgh, PA 15205-9805

| Claim Number | Policy Number | Type of Loss | Deductible |
|---|---|---|---|
| **008415727-01** | **H3** | **Wind** | **$500.00** |

Date of Loss: 06/09/2007 — Date Received: 06/12/2007
Date Inspected: 07/27/2007 12:00 PM — Date Entered: 07/27/2007 2:02 PM

Price List: PAPH4B7C
Restoration/Service/Remodel
Estimate: 2007-07-27-1401

In the following pages you will find the estimated cost of repairs to your home using prices that are usual and customary in your area. This estimate is based on the replacement cost of repairs less your policy deductible and any depreciation, if applicable.

We encourage you to work with a contractor of your choice in completing these repairs. If you or your contractor has any questions or concerns about this estimate, please contact me at your earliest convenience. It is important to call me prior to repairs beginning, as all additional work must be pre-approved by Liberty Mutual.

You may see your current mortgage company listed on your payment(s). If so, you will need to contact your mortgage company to determine their procedures for processing claims payments.

Thank you for insuring with Liberty Mutual. We appreciate your business.



**Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

**2007-07-27-1401**

**Main Level**

**Room: main roof**

552.46 Surface Area — 5.52 Number of Squares
88.48 Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Drip edge | 32.00 LF | 1.09 | 34.88 | 12.21 | 22.67 |
| Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 5.52 SQ | 40.91 | 225.82 | 0.00 | 225.82 |
| 3 tab - 25 yr. - composition shingle roofing - incl. felt | 5.67 SQ | 127.88 | 725.08 | 253.78 | 471.30 |
| **Room Totals: main roof** | | | **985.78** | **265.99** | **719.79** |

**Room: A frame roof**

517.72 Surface Area — 5.18 Number of Squares
79.82 Total Perimeter Length — 14.00 Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| R&R Sheathing - 1" x 6" - tongue and groove | 64.00 SF | 3.22 | 206.08 | 0.00 | 206.08 |
| Drip edge | 42.00 LF | 1.09 | 45.78 | 16.02 | 29.76 |
| R&R Gutter / downspout galvanized - 6"* | 12.00 LF | 7.33 | 87.96 | 0.00 | 87.96 |
| R&R downspout - aluminum - 6"* | 8.00 LF | 7.40 | 59.20 | 0.00 | 59.20 |
| Remove 3 tab - 25 yr. - composition shingle roofing - incl. felt | 5.18 SQ | 40.91 | 211.91 | 0.00 | 211.91 |
| 3 tab - 25 yr. - composition shingle roofing - incl. felt | 5.33 SQ | 127.88 | 681.60 | 238.56 | 443.04 |
| **Room Totals: A frame roof** | | | **1,292.53** | **254.58** | **1,037.95** |
| **Area Items Total: Main Level** | | | **2,278.31** | **520.57** | **1,757.74** |

 **Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

**Room: Exterior**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| R&R Wood fence 3'- 4' high * | 14.00 LF | 19.92 | 278.88 | <43.90> | 234.98 |
| Front fence over steps plus one 8' section in yard. | | | | | |
| R&R Wood gate 3'- 4' high* | 4.00 LF | 29.75 | 119.00 | <20.41> | 98.59 |
| Street number sign post | 1.00 EA | 149.99 | 149.99 | <112.49> | 37.50 |
| R&R Fir floor - tongue and groove on front porch deck - repair* | 16.00 SF | 7.52 | 120.32 | 0.00 | 120.32 |
| Mason - Brick / Stone - per hour | 4.00 HR | 44.00 | 176.00 | 0.00 | 176.00 |
| Masonry repair to front exterior due to tree impact. | | | | | |
| **Room Totals: Exterior** | | | **844.19** | **176.80** | **667.39** |

**Room: A FRAME** **Formula Elevation 25'0" x ... x 12'0"**

400.00 SF Walls
400.00 SF Long Wall
29.68 LF Ceil. Perimeter
25.00 LF Floor Perimeter
400.00 SF Short Wall

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| R&R Window sill - hardwood | 3.00 LF | 3.88 | 11.64 | 3.58 | 8.06 |
| Seal & paint window sill | 3.00 LF | 1.46 | 4.38 | 1.53 | 2.85 |
| R&R Wrap wood window frame & trim with aluminum sheet | 1.00 EA | 132.06 | 132.06 | 38.39 | 93.67 |
| Seal & paint wood window (per side) | 3.00 EA | 24.85 | 74.55 | 26.09 | 48.46 |
| R&R Soffit - wood | 21.00 SF | 3.79 | 79.59 | 0.00 | 79.59 |
| Prime & paint exterior soffit - wood | 42.00 SF | 1.27 | 53.34 | 18.67 | 34.67 |
| Scrape the surface area & prep for paint | 400.00 SF | 0.37 | 148.00 | 0.00 | 148.00 |
| Exterior masonry face of A frame area. | | | | | |
| Exterior - paint two coats | 400.00 SF | 0.72 | 288.00 | 100.80 | 187.20 |
| Exterior masonry face of A frame area. | | | | | |



**Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

CONTINUED - A FRAME

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| **Room Totals: A FRAME** | | | **791.56** | **189.06** | **602.50** |

**Room: GENERAL**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Single axle dump truck - per load - including dump fees | 1.00 EA | 231.33 | 231.33 | 0.00 | 231.33 |
| **Room Totals: GENERAL** | | | **231.33** | **0.00** | **231.33** |
| **Line Item Subtotals: 2007-07-27-1401** | | | **4,145.39** | **886.43** | **3,258.96** |

| Adjustments for Base Service Charges | Adjustment |
|---|---|
| Carpenter - General Framer | 106.02 |
| Fencing Installer | 89.54 |
| Painter | 90.84 |
| Roofer | 168.72 |
| Total Adjustments for Base Service Charges: | 455.12 |

| | RCV | DEPREC. | ACV |
|---|---|---|---|
| **Line Item Totals: 2007-07-27-1401** | **4,600.51** | **910.21** | **3,714.08** |

 **Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 400.00 | SF Walls | 0.00 | SF Ceiling | 400.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 25.00 | LF Floor Perimeter |
| 400.00 | SF Long Wall | 400.00 | SF Short Wall | 29.68 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 939.18 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 1,070.19 | Surface Area | 10.70 | Number of Squares | 168.30 | Total Perimeter Length |
| 14.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

## Summary for Wind

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 4,145.39 |
| Total Adjustments for Base Service Charges | | | | 455.12 |
| Material Sales Tax | @ | 7.000% x | 1,264.52 | 88.52 |
| Subtotal | | | | 4,689.03 |
| Overhead | @ | 10.0% x | 4,689.03 | 468.90 |
| Profit | @ | 10.0% x | 4,689.03 | 468.90 |
| Replacement Cost Value | | | | 5,626.83 |
| Less Recoverable Depreciation | | | | (873.25) |
| Less Non-Recoverable Depreciation | | | | <219.00> |
| **Actual Cash Value** | | | | **4,534.58** |
| Less Deductible | | | | (500.00) |
| **Net Claim** | | | | **4,034.58** |
| Total Recoverable Depreciation | | | | 873.25 |
| Net Claim if Depreciation is Recovered | | | | 4,907.83 |

James V. Fasano



**Liberty Mutual Insurance Company**

1550 Omega Drive
Pittsburgh, PA, 15205
Phone: (800) 208-4002
Fax: 603-334-0382

Main Level

| FACE | SQ FT | # SQs |
|---|---|---|
| F7 | 552.46 | 5.52 |
| F8 | 258.86 | 2.59 |
| F9 | 258.86 | 2.59 |
| Estimated Total: | 1070.19 | 10.70 |

N

Main Level